UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JERRI N. CURLESS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:04-cv-0672-DFH-TAB |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

ENTRY ON JUDICIAL REVIEW

Plaintiff Jerri N. Curless seeks judicial review of a decision by the Commissioner of Social Security denying her application for disability insurance benefits under the Social Security Act. Acting for the Commissioner, an Administrative Law Judge ("ALJ") determined that Mrs. Curless was not disabled within the meaning of the Social Security Act because she could perform her past work as a clerk-typist. The ALJ found, contrary to the opinion of Mrs. Curless's treating physician, that the side effects of her medication would not interfere with her ability to perform such sedentary work. The ALJ also found that Mrs. Curless's accounts of the severity of her impairments were not credible. As explained below, the case must be remanded because the ALJ failed to build a logical bridge between the evidence and these critical findings.

*Background*

Plaintiff Jerri N. Curless was 52 years old in 2003 when  the ALJ found her ineligible for disability insurance benefits under the Social Security Act.  She completed high school and some college courses.  Mrs. Curless has worked as a clerk-typist, babysitter, administrative assistant, store clerk, cleaner, and most recently as a program and event coordinator.  She claimed to suffer from degenerative disc disease, fibromyalgia, left shoulder problems, coccyx injury, sciatic injury, joint dysfunction, and depression, among other conditions.  Mrs. Curless claimed that these impairments disabled her within the meaning of the Social Security Act after August 1, 2001.

Mrs. Curless began undergoing treatment by Paige Huls, M.D., in 1999 for fibromyalgia, myofascial pain syndrome, degenerative disc disease, joint dysfunction, and depression.  R. 197.  Mrs. Curless reported to Dr. Huls on August 10, 2001 that she was unable to work as a result of her symptoms.  R. 218.  One month later, Mrs. Curless sought treatment by Alexander Mih, M.D., for consistent shoulder pain that was interfering with sleep and with overhead use of her arm.  Dr. Mih recommended that she begin physical therapy.  R. 202-06.  By September 10, 2002, Dr. Mih reported that Mrs. Curless's shoulder showed "significant improvement" but also noted that she was experiencing problems with her hands.  R. 44.

In response to a request by Dr. Huls, Rafael Grau, M.D., a rheumatologist at the Indiana University Medical Center, examined Mrs. Curless on September 17, 2001. Dr. Grau reported that Mrs. Curless had "significant and longstanding fibromyalgia" that was "well managed from a medical standpoint." R. 16, 233. Dr. Grau further reported that Mrs. Curless was experiencing tenderness on palpation of both the large and small joints of her lower extremities and pain on palpation of the muscle mass. Dr. Grau noted that Mrs. Curless had tender pressure points. He reported that she was alert and oriented, exhibited good range of motion and function of the arms and legs, and demonstrated an unremarkable gait. Dr. Grau listed Mrs. Curless's medications as Celebrex, Ultram, Hydrocodone, Clarespirdol, Celexa, Trazodone, Prevacid, Gabotril, and other medications. R. 231-33.

On March 18, 2002, Mrs. Curless completed a disability report listing her conditions and symptoms. She reported severe pain when sitting, standing, or walking. She also reported that her pain significantly interfered with her ability to get dressed or get out of bed. R. 114-22

On April 10, 2002, Dr. Huls examined Mrs. Curless. Dr. Huls reported that Mrs. Curless experienced pain in the buttocks and legs that became severe when standing or walking for more than five minutes. She reported that Mrs. Curless experienced loss of grip strength and had significantly impaired fine motor skills, impaired gross motor skills, and limited range of motion. The following day, Dr.

Huls wrote that Mrs. Curless's cognitive functioning was impaired as a result of the narcotics prescribed to relieve her pain, and that she required "assistance at home with the most basic activities of daily living." Dr. Huls further opined that Mrs. Curless was "totally and permanently disabled" and would be unable to maintain employment. R. 197-200.

In May 2002, Quing Jia, M.D., a consulting examiner, examined Mrs. Curless and reported that she was able to sit for eight hours, to stand for seven hours, and to walk for six hours during an eight-hour workday. Dr. Jia reported that Mrs. Curless could manipulate objects with both hands and could occasionally bend, squat, crawl, climb and reach. Dr. Jia listed Mrs. Curless's medications as including Lidoderm, Prenate, Oxycontin, Zoloft, Pamelor, Vicodin, Carisporodol, Trazodone, and Nexium, among others. R. 14, 190-96.

Nancy A.M. Ingwell, Ph.D., also a consulting examiner, evaluated Mrs. Curless on June 9, 2002. Dr. Ingwell diagnosed Mrs. Curless with depressive disorder, not otherwise specified, situational. R. 12, 176. Mrs. Curless reported that her interests included reading to her grandchildren and composing graphics on the computer. Mrs. Curless reported a history of anxiety and depression. She reported that she had been prescribed Zoloft but was "not taking it every week." She reported not having taken it during the week of the examination by Dr. Ingwell. R. 172. However, Mrs. Curless also reported that she did not feel depressed because she was "on Zoloft," which Dr. Ingwell noted as a contradiction

to her earlier report.  Dr. Ingwell's report states that Mrs. Curless was taking Oxycodone, Carispordal, Hydrocodone, Nortriptyline, Trazodone, Maxzide, Lidodern, and other medications, including Zoloft.  R. 171-176.

In November 2003, Dr. Huls reported that Mrs. Curless sought treatment on a monthly basis for what Dr. Huls characterized as "chronic unrelenting pain." R. 47.  The report identified multiple tender points on Mrs. Curless's body.  Dr. Huls reported that Mrs. Curless's medication impaired her cognition.  She also reported that Mrs. Curless could never lift more than ten pounds and could never twist, stoop, crouch, or climb stairs.  Dr. Huls also reported that Mrs. Curless was not able to stand or sit "for any length of time" and that she was likely to miss more than four days of work each month as a result of her impairment.  Dr. Huls also noted that Mrs. Curless had symptoms of depression.  R.  47-56.

Mrs. Curless applied for disability insurance benefits in March 2002.  After her application was denied both initially and upon reconsideration, Mrs. Curless requested a hearing.  Mrs. Curless, her husband, and a vocational expert testified before an ALJ on December 4, 2003.  The ALJ denied her claim on December 22, 2003.  Because the Appeals Council denied further review of the ALJ's decision, R. 3, the ALJ's decision is treated as the final decision of the Commissioner.  *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994).  Mrs. Curless filed a petition for judicial review on April 15, 2004.  The court granted the Commissioner's motion to remand the matter on August 12,

2004 to allow completion of the administrative record.  On February 9, 2005, the Commissioner requested that the matter be reopened.  The court has jurisdiction in the matter under 42 U.S.C. § 405(g).

<em>The Disability Standard</em>

To be eligible for disability insurance benefits, a claimant must establish that she suffers from a disability within the meaning of the Social Security Act. To prove disability under the Act, the claimant must show that she was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that could be expected to result in death or that has lasted or could be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d).  Mrs. Curless was disabled only if her impairments were of such severity that she was unable to perform work that she had previously done and if, based on her age, education, and work experience, she also could not engage in any other kind of substantial work existing in the national economy, regardless of whether such work was actually available to her.  *Id.*

This standard is a stringent one.  The Act does not contemplate degrees of disability or allow for an award based on partial disability.  *Stevens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985).  Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including

taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful.

The implementing regulations for the Act provide the familiar five-step process to evaluate disability.  The steps are:

(1)     Has the claimant engaged in substantial gainful activity? If so, she was not disabled.

(2)     If not, did the claimant have an impairment or combination of impairments that are severe?  If not, she was not disabled.

(3)     If so, did the impairment(s) meet or equal a listed impairment in the appendix to the regulations?  If so, the claimant was disabled.

(4)     If not, could the claimant do her past relevant work? If so, she was not disabled.

(5)     If not, could the claimant perform other work given her residual functional capacity, age, education, and experience? If so, then she was not disabled.  If not, she was disabled.

See generally 20 C.F.R. § 404.1520.  When applying this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

*Standard of Review*

If the Commissioner's decision is supported by substantial evidence, it must be upheld by a reviewing court. 42 U.S.C. § 405(g); *Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971). To determine whether substantial evidence exists, the court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's judgment by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000); *Luna*, 22 F.3d at 689. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). However, a remand may be required if the ALJ has failed to "build a logical bridge from the evidence to his conclusion," *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir.2002), though the ALJ need not provide a "complete written evaluation of every piece of testimony and evidence." *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995); accord, *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

*Discussion*

Applying the five-step process, the ALJ found that Mrs. Curless satisfied steps one and two: she was not currently working and she had severe impairments including degenerative joint disease, degenerative disc disease, obesity, and fibromyalgia.  The ALJ found that Mrs. Curless's depression was not a severe impairment.  At step three, the ALJ found that Mrs. Curless failed to demonstrate that any of her severe impairments met or equaled a listed impairment.  At step four, the ALJ found that Mrs. Curless failed to demonstrate that she was unable to perform her past work as a clerk-typist.  Based on these findings, the ALJ concluded that Mrs. Curless was not disabled under the Social Security Act.

Mrs. Curless challenges the ALJ's step-four finding that she retained the ability to perform work as a clerk-typist.  She argues that the ALJ's finding was not supported by substantial evidence because the ALJ (1) failed to give controlling weight to the opinion of her treating physician regarding the side effects of her medications; (2) failed to support the adverse credibility finding with substantial evidence; and (3) failed to evaluate adequately her fibromyalgia.  Mrs. Curless also challenges the ALJ's step-two finding that her depression was not a severe impairment.  The court finds that the ALJ failed to account for his decision to discount the treating physician's opinion and failed to support the adverse

credibility finding.  Because each failure independently requires remand, the court does not reach Mrs. Curless's remaining arguments.

I.    *The Treating Doctor's Opinion on Side Effects*

When an ALJ is determining a claimant's ability to work, the ALJ must consider the "type, dosage, effectiveness, and side effects of any medication" that the claimant takes for relief of symptoms.  20 C.F.R. § 404.1529(c)(3)(iv).  When such evidence is found to be reasonably consistent with other evidence in the record, including objective medical evidence, it shall be taken into account in the ALJ's residual functional capacity assessment.  *Id.* at (c)(3) & (4).

In addition, a treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record.  *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); 20 C.F.R. § 404.1527(d)(2).  If an ALJ chooses to discount the opinion of a treating physician, such a decision must be based on "medical evidence or authority in the record" and may not amount to simply the substituted judgment of the ALJ.  *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).  The ALJ did not identify substantial evidence to support his decision to set aside treating physician Dr. Huls's opinion regarding the side effects of Mrs. Curless's medication.

Dr. Huls began treating Mrs. Curless for her fibromyalgia and other conditions in 1999. By the time of the hearing in December 2003, Dr. Huls was seeing her monthly for medication adjustment. R. 51, 197, 293. Dr. Huls reported that Mrs. Curless's medications caused drowsiness and fatigue, impaired cognition, and impaired decision-making ability, and that these side effects prevented her from performing even sedentary work. R. 47, 50, 53, 197. Mrs. Curless also testified that her medication interfered with her concentration by causing her to feel groggy, dizzy, and weak. R. 294. The ALJ's findings acknowledged this evidence. R. 16. However, the ALJ found that Mrs. Curless was nonetheless capable of performing sedentary work because: (1) she reported interest in reading to her grandchildren, (2) she and her daughter reported that she read for enjoyment, and (3) she reported that she enjoyed composing graphics on the computer. R. 15-16.

The ALJ is not required to accord the treating physician controlling weight when the physician's opinion is inconsistent with "substantial evidence" in the record. 20 C.F.R. § 404.1520(d)(2). In this case, the evidence cited by the ALJ simply is not inconsistent with Dr. Huls's assessment of the side effects of Mrs. Curless's medications. The ALJ's finding regarding the side effects of Mrs. Curless's medication is not supported by substantial evidence.

The reports regarding Mrs. Curless's reading to her grandchildren and composing graphics came from Dr. Ingwell's report. The report indicated that

reading to grandchildren and composing computer graphics were "interests" of Mrs. Curless.  Dr. Ingwell gave no indication of how long Mrs. Curless could sustain either activity or how often she performed either of these activities.  R. 172.  Mrs. Curless reported that she did not use the computer consistently and that doing so caused her pain.  R. 68.  She testified during the hearing that she had not read to her grandchildren "in months" and that her lack of concentration interfered with her reading.  R. 296, 300.  Though Mrs. Curless's daughter reported that Mrs. Curless read for over two hours per day, she also reported that Mrs. Curless read in "a chair or her bed."  R. 106.  Mrs. Curless  reported that her lack of concentration interfered with her reading.  R. 296.  This claim is supported by Dr. Huls's assessment.  R. 50.

The reasons cited by the ALJ for his findings simply are not inconsistent with Dr. Huls's assessment that Mrs. Curless was unable to perform even sedentary work as a result of the side effects of her medications.  The reports on computer use and reading to grandchildren gave no information on either frequency or duration of use that would amount to a conflict with Dr. Huls's report.  Further, Mrs. Curless reported, consistent with Dr. Huls, that her ability to read was impaired by side effects of her medications.  What remained was one comment from Mrs. Curless's daughter that Mrs. Curless read over two hours per day.  That is not substantial evidence to overcome the otherwise unchallenged opinion of a treating physician.  Cf. *Clifford*, 227 F.3d at 870 ("We have. . .insisted that an ALJ must not substitute his own judgment for a physician's opinion

without relying on other medical evidence or authority in the record."), citing *Rohan*, 98 F.3d at 970 ("As this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992) (ruling that the ALJ "impermissibly substituted his own medical judgment" for that of a physician by basing findings on "specious inconsistencies" rather than the physician's conclusions).

The ALJ also failed to explain how the ability to read briefly for pleasure, to read briefly and occasionally with grandchildren, and to use a computer occasionally to communicate with family shows an ability to engage in economically competitive full-time work.  See *Clifford*, 227 F.3d at 872 (minimal daily activities did not amount to substantial evidence that claimant was capable of substantial physical activity); *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (performance of minimal or daily household activities did not amount to substantial evidence that claimant was able to engage in substantial gainful activity), citing *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987).

Because the ALJ failed to identify the required substantial evidence supporting his decision to discount the treating physician's opinion regarding side effects of Mrs. Curless's medications, his decision must be remanded for further consideration.

II.    *The Claimant's Credibility*

The ALJ found that Mrs. Curless was not "entirely credible" regarding the extent to which her pain limited her functional capacity.  He found that although she experienced symptoms, they were not so severe as to render her unable to engage in sedentary work.  R. 17.  Because the ALJ's credibility finding is not supported by substantial evidence and is patently wrong, it cannot be upheld.

In making the disability determination, the ALJ must consider a claimant's statements about her symptoms and how such symptoms affect her daily life and ability to work.  20 C.F.R. § 404.1529(a).  The claimant's subjective allegations alone will not support a finding of disability.  The regulation provides a two-part test for determining when complaints of pain can support a finding of disability.  First, the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that could reasonably be expected to produce the symptoms alleged.  Second, if the ALJ has found such an impairment, the ALJ must consider the intensity and persistence of those symptoms.  20 C.F.R. § 404.1529(c).

The ALJ can discount subjective complaints that are inconsistent with the evidence as a whole, but cannot discount such complaints merely because they are not supported by objective medical evidence.  *Knight v. Chater*, 55 F.3d 309, 314, citing 20 C.F.R. § 404.1529(c)(3) ("The absence of objective medical evidence

is just one factor to be considered along with:  (a) the claimant's daily activities; (b) the location, duration, frequency and intensity of pain; (c) precipitating and aggravating factors; (d) type, dosage, effectiveness and side effects of medication; (e) treatment other than medication; (f) any measures the claimant has used to relieve the pain or other symptoms; and, (g) functional limitations and restrictions.").

The regulations require the ALJ to determine whether the claimant is disabled by considering both the claimant's "statements about the intensity, persistence, and limiting effects" of symptoms and the "objective medical evidence" available to support or contradict the claimant's statements.   20 C.F.R. § 404.1529(c)(4).  As part of this analysis, the ALJ must consider "whether there are any inconsistencies in the evidence" as well as any conflicts between the statements of the claimant and other evidence in the record.  *Id.*

Because hearing officers have the unique opportunity to observe a witness and to evaluate a witness's forthrightness, courts generally afford such officers' credibility determinations substantial deference.  *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).  An ALJ's credibility finding will not be disturbed unless it is "patently wrong."  *Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986); see also *Diaz v. Chater,* 55 F.3d 300, 308 (7th Cir. 1995).  However, where the ALJ bases his finding on "objective factors or fundamental implausibilities, rather than subjective considerations," the court enjoys greater freedom to review the finding.

*Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994), citing *Anderson v. Bessemer County*, 470 U.S. 564, 574 (1985).  An ALJ's decision will not be upheld where the ALJ failed to "build an accurate and logical bridge" between the evidence in the record and the findings.  *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

Mrs. Curless reported that she experienced such great pain that it was difficult for her to dress and that she "just couldn't function," even while at home. R. 115.  She reported that, despite treatment and medication, standing, sitting, and walking were each very painful.  *Id.*  Mrs. Curless also reported that the side effects of her medication interfered with her ability to concentrate, and caused her to feel weak and "groggy."  R. 294.  As discussed above, this evidence was supported by her treating physician, and her pain medications were certainly powerful ones.

The ALJ also found that Mrs. Curless was not credible regarding the extent to which she was limited by her symptoms.   R. 17.   In support of this determination, the  ALJ cited three supposed inconsistencies in the record that cast significant doubt on Mrs. Curless's credibility.  *Id.*

First, the ALJ stated that Mrs. Curless's claims that she read and used a computer were inconsistent with her claim that she was confused when driving. *Id.*  The ALJ's residual functional capacity finding stated that Mrs. Curless should avoid operating motor vehicles.  R. 18.  The ALJ failed to explain how reports of

-16-

reading for enjoyment and occasional use of a computer are actually inconsistent with reports of confusion while driving.

Second, the ALJ stated that Mrs. Curless's report to Dr. Huls in December 2001 that she had trouble sleeping was inconsistent with her report two months later that she slept twelve to fourteen hours per day.  R. 17, citing R. 209, 214. The supposed inconsistency is not at all obvious.  Because "symptoms may vary in their intensity, persistence, or functional effects," an inconsistency in the claimant's report of symptoms "does not necessarily mean that the individual's statements are not credible."  Social Security Ruling 96-7p, printed in 61 Fed.Reg. 34483-01, 34486 (1996).   The ALJ must determine whether apparent inconsistencies can be explained by a sufficient review of the case record.  *Id.*  Any potential inconsistency between the two reports may be due to a change in the intensity or persistence of Mrs. Curless's symptoms.  The ALJ offered neither further explanation nor the required sufficient review of the record to support the finding.

A sufficient review of the record might have revealed that Mrs. Curless's "problems sleeping" were a result of her frequent awakening due to pain, which Mrs. Curless consistently reported.  R. 68, 172.  During the hearing, Mrs. Curless testified that her pain had recently kept her awake.  R. 293.  She reported to Dr. Ingwell that she was awakened by pain "every hour."  R. 172.  Dr. Huls noted that Mrs. Curless experienced "nonrestorative sleep" and that her pain was interfering

with her sleep.  R. 51, 213.  Dr. Grau reported that Mrs. Curless slept poorly.  R. 232.  Mrs. Curless's husband also reported that she could not sleep "for long periods of time."  R. 302.  The ALJ failed to explain how a report that Mrs. Curless slept between twelve and fourteen hours each day was inconsistent with her report only that she had "problems sleeping," especially given the many reports that she awoke frequently due to pain.

The third supposed inconsistency cited by the ALJ pertained to Mrs. Curless's reports regarding Zoloft.  The ALJ stated that Mrs. Curless first reported to Dr. Ingwell that she was not currently taking Zoloft but later reported in the same interview that she was "on Zoloft," implying that Mrs. Curless was untruthful with Dr. Ingwell.  R. 17, citing R. 171, 174.  The ALJ found this to be sufficient to discredit Mrs. Curless's reports regarding the extent to which the symptoms of her severe impairments and the side effects of her medication limited her functional capacity.  R. 17.

The supposed inconsistency is not at all clear.  Mrs. Curless told Dr. Ingwell that she did take Zoloft, that she did not take it every week, and that she had not taken during it the week of the evaluation.  R. 171, 172.  Mrs. Curless reported later in the evaluation that she did not feel depressed because she was "on Zoloft." R. 174.  Dr. Ingwell's report does not support the ALJ's statement that Mrs. Curless "reported she was not currently taking Zoloft." R. 17.  Rather, Dr. Ingwell's report demonstrates that Mrs. Curless reported that she took Zoloft, but

that she did not adhere strictly to a consistent regimen.  See R. 171-74.  Dr. Ingwell's report listed Zoloft as one of Mrs. Curless's medications.  R. 174. Additionally, the record includes repeated reports from Mrs. Curless and her physicians that she took Zoloft.  Mrs. Curless testified at her hearing that she took Zoloft for depression.  R. 297.  Less than a month before Dr. Ingwell's evaluation, Dr. Jia listed Zoloft as one of Mrs. Curless's medications in an examination report. R. 191.  Medical records show that Dr. Huls prescribed Zoloft.  R. 213, 208, 209.

The ALJ likely found the potential inconsistency by seizing upon a parenthetical comment by Dr. Ingwell.  The comment stated that Dr. Ingwell considered Mrs. Curless's report that she had not taken Zoloft for a week a "contradiction" to her statement that she was "on Zoloft."  R. 174.  Regardless of whether or not Dr. Ingwell's conclusion was logical, which is questionable, any contradiction demonstrates only that Mrs. Curless did not take Zoloft according to a strict regimen, not that she lied about being "on Zoloft."  It is also worth noting here that one of Mrs. Curless's basic problems is that her strong pain medications make her groggy and interfere with clear thought.  Even if she is not an entirely reliable and precise reporter of her own activities, those problems seem likely to interfere with full-time work as a clerk-typist, which was the work the ALJ said she could still perform.

Even where the record contains sufficient evidence to support an ALJ's decision, the decision may not be upheld where "the reasons given by the trier of

fact do not build an accurate and logical bridge between the evidence and the result." *Sarchet*, 78 F.3d at 307 (7th Cir. 1996); accord, *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).  The three  inconsistencies cited by the ALJ are far too fragile to support the adverse credibility finding here.  Because the ALJ failed to build an accurate and logical bridge between the evidence and the adverse credibility finding, the finding is patently wrong.

### Conclusion

The ALJ's finding at step four is not supported by substantial evidence for two related yet independently sufficient reasons.  First, the ALJ did not identify evidence sufficient to support his decision to set aside the opinion of Dr. Huls regarding the side effects of Mrs. Curless's medication.  Second, the ALJ failed to support his decision to discount Mrs. Curless's credibility.  As a result, the ALJ's determination that Mrs. Curless was able to perform her past relevant work is unreliable because it is based on a degree of functional capacity that lacks substantial support in the record.  When the decision of an ALJ is "unreliable because of serious mistakes or omissions, the reviewing court must reverse unless satisfied that no reasonable trier of fact could have come to a different conclusion, in which event a remand would be pointless." *Sarchet*, 78 F.3d at 308-09.  Based on the evidence in the record and on the ALJ's written decision, this court is not satisfied that no reasonable trier of fact could have come to a different conclusion than the ALJ came to in this case.

Accordingly, the decision of the ALJ is reversed and remanded for reconsideration consistent with this entry.  On remand, all steps of the five-step sequential evaluation are subject to reconsideration.  Final judgment shall be entered consistent with this entry.


So ordered.

Date: August 19, 2005

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana


Copies to:

G. Robert Wright
grwright1@ameritech.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov